

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00549-CR

MARCO ANTONIO PEREZ                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
## TRIAL COURT NO. 1274561D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Marco Antonio Perez appeals his plea-bargained conviction for evading arrest. In three related issues, he argues that his trial counsel was ineffective and that his guilty plea was involuntary. We affirm.

---

[1]*See* Tex. R. App. P. 47.4. This case was originally submitted on October 31, 2013. On July 10, 2014, the court, on its own motion, ordered the appeal to be resubmitted on August 1, 2014; assigned the appeal to a new panel; and assigned the undersigned to author the opinion.

## Background Facts

In the spring of 2012, a grand jury indicted appellant with evading arrest while using a vehicle, a third-degree felony.[2] The indictment contained a repeat-offender notice alleging that appellant had been previously convicted of a drug-related felony.

Appellant retained counsel. In May 2012, the State offered a plea bargain for five years' confinement. On September 6, 2012, counsel filed a motion to withdraw, alleging that she had been retained to represent appellant "up to a plea," that he had failed to hire her for a trial, and that he had failed to communicate with her. The same day, pursuant to a plea bargain agreement for four years' confinement, appellant waived constitutional and statutory rights, judicially confessed, and pled guilty. The trial court convicted him that day.

Two weeks later, the parties attended a sentencing hearing. At the beginning of the hearing, the trial court found the repeat offender notice to be true[3] and sentenced appellant to four years' confinement. Appellant, through counsel, then attempted to withdraw his guilty plea. He testified that he had entered the plea without understanding it, while he was "under pressure," and through limited consultation with his counsel. He admitted, however, that he had

---

[2]See Tex. Penal Code Ann. § 38.04(a), (b)(2)(A) (West Supp. 2014); *Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.).

[3]Thus, appellant's punishment range was two to twenty years' confinement. *See* Tex. Penal Code Ann. § 12.33(a) (West 2011), §§ 12.42(a), 38.04(b)(2)(A) (West Supp. 2014).

"spent a lot of time out in the hallway" with his counsel. The following colloquy then occurred between appellant, counsel, and the trial court:

> [DEFENSE COUNSEL:] Okay. Marco, actually I gave you some choices that if you wanted to proceed to trial, then I needed trial fees for us to continue on and I would be glad to represent you all the way through trial. Did I not tell you that?
>
> [APPELLANT:] Yes. Yes.
>
> Q. . . . And I also told you that if you took this plea, the District Attorney was willing to give you four years on that date if you took it that date, correct?
>
> A. Yeah. . . .
>
> . . . .
>
> Q. . . . I never tell you what you should do. I never tell any of my clients what [they] should do. What I did in this case back two weeks ago was on your cue, see if I can get you three [years' confinement]. Do you remember that?
>
> A. Yes.
>
> Q. Okay. But I couldn't. But I did come back with the offer of four if you took it that day. Do you remember that?
>
> A. If we took it that day.
>
> Q. Right. And so because you also were caught off guard a little bit and needing to get your affairs together, you asked if you could have time before you accepted it in order to do what you needed to do, correct? Do you remember all that?
>
> A. Yes. Yes.
>
> . . . .
>
> Q. Okay. So, basically, you were *forced into a position to decide to fight your case towards trial or to take this plea bargain of four years*, which was reduced one from your original offer, but you had to take it and take the first half of your plea knowing that you

3

could come back in two weeks and finalize your sentencing and turn yourself in. *Isn't that what happened?*

*A. Yes, that's what happened.*

Q. Okay. You have had second thoughts since then, correct?

A. Well, immediately, actually. I knew I wasn't -- you know, I was railroaded, you know.

Q. No, you're not being railroaded. You made those decisions freely and voluntarily and you sat here and told this judge that, correct, at the time he took your plea?

A. Well, the thing is, I signed the paper and next thing I know I'm getting pled guilty. I wasn't understanding what was going on.

Q. Well, I read everything on your paperwork, your plea paperwork to you, did I not?

A. Yes. Yes.

*Q. I went over it completely with you in the hall; is that right?*

*A. Yes.*

. . . .

Q. Did I present the alternative to go ahead and go to trial and pay me to go to trial? Did I give you that alternative?

A. *Yes.* And I told you it would be no problem . . . . But you wanted it right then and there and we weren't going to trial right then and there.

Q. No. I told you, you had to sign an agreement right then and there and put something down towards trial?

A. Signing an agreement and put something down towards trial, that's what I wanted to do.

Q. *And you chose not to do that and you signed your paperwork for the four years*; is that correct?

4

A. You also told me that you did not want to try my case. If you didn't want to do -- you know, carry my case, you just would have just said so.

Q. Marco, I am a trial lawyer. I get paid all the time to go to --

A. I know.

Q. . . . I have always explained to you I'm capable of going --

A. Yes, ma'am.

Q. -- as far as you would like me to go. But just like anyone else, we got to be paid to do our work, correct?

A. Yes.

Q. That's not a question in your mind, is it?

A. Yes. I understand that. But, you know, if you weren't paid right then and there, I get -- I have to plea bargain to do something else and which I told you I would take care of you. I would. All I needed to do is just go to the bank and go to your office . . . .

Q. We were on motions docket and this was my last chance to easily get off of the case for lack of trial fees, okay. And so I told you that we needed to make a direction, I told you this when you first came into my office when you first hired me how things worked, didn't I?

A. Yes, you did.

Q. Okay. But you've just changed your mind, you didn't like your decision that day, and you're asking this Court to please reconsider, undo your plea and give you a chance to have your constitutional right to fight your case in trial? Isn't that what it really boils down to?

A. Yes, yes, just so I can -- it's equal opportunity to -- that way I can -- I feel better that I at least --

Q. This is not really about me, is it?

A. No. It's just that way I can . . . fight . . . just to get equal opportunity . . . .

5

. . . .

> THE COURT: Well, I found that day that it was a free and voluntary plea. I find that still today . . . . [Emphasis added.]

Appellant filed an unavailing motion for new trial and brought this appeal with the trial court's permission.

### The Alleged Ineffective Assistance of Counsel and the Voluntariness of Appellant's Guilty Plea

In his first two issues, appellant contends that he received ineffective assistance of counsel under federal and state law because counsel allegedly forced him to either pay her or accept a plea bargain for four years' confinement. In his third issue, he contends that the trial court should have allowed him to withdraw his guilty plea because it was not voluntary. Appellant does not provide separate arguments for his state and federal ineffective assistance claims. Also, appellant premises his ineffective assistance claims on the alleged involuntariness of his guilty plea. Thus, we will combine our analysis of appellant's three issues.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that but for counsel's deficiency, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009). In other words, for a claim of ineffective assistance of counsel to succeed, the

6

record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012); *see Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."), *cert. denied*, 537 U.S. 1195 (2003). The record must affirmatively demonstrate the meritorious nature of an ineffective assistance claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

A defendant is entitled to effective assistance of counsel when entering a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S. Ct. 366, 370–71 (1985); *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). No guilty plea may be accepted by a trial court unless it appears that "the plea is free and voluntary." Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2014). "A defendant's plea is not voluntary when it results from ineffective assistance of counsel. The test for determining the validity of a plea is whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant." *Ex parte Karlson*, 282 S.W.3d 118, 129 (Tex. App.—Fort Worth 2009, pet. ref'd) (citation omitted); *see Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012).

When an appellant challenges the voluntariness of a plea, contending that trial counsel was ineffective, the appellant must prove that (1) counsel's advice was not within the range of competence demanded of attorneys in criminal

cases, and (2) there is a reasonable probability that but for counsel's errors, the appellant would not have pled guilty and would have insisted on going to trial.[4] *Ex parte Moody*, 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999); *see Ex parte Niswanger*, 335 S.W.3d 611, 615 (Tex. Crim. App. 2011); *Ex parte Owenga*, No. 02-13-00038-CR, 2014 WL 3028914, at *2 (Tex. App.—Fort Worth July 3, 2014, no pet.) (mem. op., not designated for publication) ("To meet his burden under the second prong, the [appellant] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances . . . ."). In determining whether a defendant would have pled guilty but for counsel's deficient advice, a court is to consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination. *Ex parte Moreno*, 382 S.W.3d 523, 528 (Tex. App.—Fort Worth 2012, pet. ref'd).

At the sentencing hearing, appellant initially testified that he did not understand what was happening when he entered his plea and that he had spoken only "a few words" to counsel before the plea. But when pressed by counsel, he admitted that he had spent significant time discussing the details of the plea with counsel before he entered it and that counsel had read all of his plea paperwork to him.[5] He also conceded that he had initiated the strategy of

---

[4]The law does not require appellant to prove that he would have received a more favorable disposition by proceeding to trial. *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1181 (2006).

[5]The paperwork informed appellant of his right to a jury trial, confirmed that he was "aware of the consequences of [his] plea," and expressed that the plea

attempting to secure a plea bargain for three years' confinement after the State had initially offered a plea bargain for five years' confinement. When trial counsel asked whether seeking a plea bargain for three years' confinement was "on [appellant's] cue," appellant responded affirmatively. Appellant also testified that counsel answered every question he had asked about his plea. Accordingly, after witnessing appellant's demeanor and evaluating his statements, the trial court found on the day of the plea and two weeks later at the sentencing hearing that the plea was "free and voluntary."

Appellant contends that his trial counsel "filed a motion to withdraw . . . for failure to pay trial fees and informed [him] that he must accept a plea deal or give a down payment on trial."[6] He also asserts that "[b]ut for being in such a position, [he] would have pleaded not guilty and proceeded to a jury trial."

But even if we were to assume that counsel was incompetent by attempting to withdraw because she had not been paid for trial, appellant did not

was "knowingly, freely, and voluntarily entered." The paperwork also expressed appellant's satisfaction with the representation he had received from counsel, stating that she had been "fully effective and competent." This paperwork provides additional evidence that counsel was effective and that appellant's plea was voluntary. *See Thomas v. State*, Nos. 02-09-00364-CR, 02-09-00365-CR, 02-09-00366-CR, 2010 WL 4028092, at *1 n.3 (Tex. App.—Fort Worth Oct. 14, 2010, no pet.) (mem. op., not designated for publication) (considering a defendant's written plea admonishments in determining that nothing in the record supported a claim of ineffective assistance leading to an involuntary plea); *see also Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (stating that when assessing the voluntariness of a plea, courts examine the entire record).

[6]At one point in his testimony, however, appellant said that counsel had told him that she did not want to take the case to trial.

prove by a preponderance of the evidence that this alleged error was the cause of his acceptance of the plea bargain or that he would have otherwise insisted on going to trial. *See Moody*, 991 S.W.2d at 857–58. Instead, the record shows that the impetus behind appellant's acceptance of the plea bargain is that he offered to enter a plea bargain for three years' confinement and the State counteroffered a term of four years only if appellant accepted the offer that day. Appellant testified that he was put "under pressure" and caught off guard by the State's counteroffer but that he accepted it under the condition that he could have two weeks before sentencing to tend to personal matters.[7] When counsel asked whether appellant had been put to a choice of taking his case to trial or accepting the plea bargain for four years' confinement, appellant responded, "Yes, that's what happened." Appellant conceded that counsel gave him the option to refuse the State's counteroffer and go to trial; counsel represented that appellant refused that option. Appellant's initiation of negotiations with the State for a plea bargain on the day of his plea and his acceptance of a plea bargain in which both sides gave up one year from their original offers undermines his

---

[7]The pressure produced by the short-term availability of the State's counteroffer, by itself, did not make appellant's plea involuntary. *See Villalovos v. State*, No. 11-00-00193-CR, 2001 WL 34373439, at *1–2 (Tex. App.— Eastland Mar. 29, 2001, pet. ref'd) (not designated for publication) (holding that a defendant's guilty plea was not involuntary merely because it was made in acceptance of a plea bargain offer that the State had threatened to withdraw after a short period of time); *see also Gaither v. State*, 479 S.W.2d 50, 51 (Tex. Crim. App. 1972) (acknowledging that "[a]ll pleas of guilty are the result of some pressures or influences on the mind of the defendant").

position at trial and on appeal that he did not want to "plea out" and that he would have proceeded to trial absent counsel's attempt to withdraw.

Next, appellant admitted that he disliked the decision that he had made on the day of his plea, that he had since changed his mind, and that his request to withdraw his plea was not "really about" counsel's representation but was instead borne from a desire to "get something better" by "plead[ing] . . . out." And when appellant explained why he wanted to withdraw his guilty plea, he did not primarily urge his innocence for evading arrest but spoke more about mitigating attributes such as owning a business and supporting his family.

Under these facts, we cannot conclude that appellant has met his burden to show by a preponderance of the evidence that any deficiency in counsel's representation caused him to accept the plea bargain or that he would have insisted on going to trial if not for counsel's threat to withdraw. While some of appellant's testimony may suggest his belief on the day of his plea that he needed to accept the plea bargain or pay counsel for trial, the trial court had the discretion to reject this testimony. *See Galan v. State*, 308 S.W.3d 414, 416 (Tex. App.—Amarillo 2010, no pet.); *Hayden v. State*, 818 S.W.2d 194, 197 (Tex. App.—Corpus Christi 1991, no pet.). One reason that the court may have done so is that counsel's motion to withdraw stated, "This withdrawal is not sought for delay . . . but that [appellant] *might be represented by counsel of his choice.*" [Emphasis added.] Also, other parts of appellant's testimony were inconsistent. For example, he first testified that he had not significantly discussed his plea with

11

counsel but later admitted that she had explained the paperwork and had answered all of his questions, and he testified that he had not desired to "plea out" but conceded that he had urged counsel to seek a plea bargain.

For all of the reasons stated above, considering the entire record, including the trial court's findings before and after appellant attempted to withdraw his plea that he entered the plea freely and voluntarily, we hold that he has not established that his counsel was ineffective or that his plea was involuntary and that the trial court did not abuse its discretion by rejecting his attempt to withdraw the plea. *See Moody*, 991 S.W.2d at 857–58; *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979). We overrule all three of appellant's issues.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 9, 2014